## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

KEVIN BRIAN BRAY                                          PETITIONER
Reg #09837-033

V.                              No. 2:22-CV-142-JTR

JOHN P. YATES, Warden,
FCI-Forrest City                                          RESPONDENT

## MEMORANDUM OPINION AND ORDER[1]

Pending before the Court is a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. *Doc. 1*. Petitioner Kevin Brian Bray ("Bray") challenges the calculation of his First Step Act ("FSA") Earned Time Credits. For the reasons explained below, Bray's Petition is DENIED.

### I. Background

On October 18, 2007, Bray pled guilty in the United States District Court of The Western District of Kentucky to four separate federal crimes: (1) Attempt to Knowingly and Intentionally Manufacture Methamphetamine; (2) Conspiracy to Knowingly and Intentionally Manufacture Methamphetamine; (3) Knowingly and Intentionally Possessing a List I Chemical (Pseudoephedrine) With Intent to Manufacture Methamphetamine; and (4) Knowingly Possessing Equipment,

---

[1] By written consent of the parties, this case was referred to a United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment, in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. *Doc. 13.*

Chemicals, and Materials Intending to Manufacture Methamphetamine. *Doc. 1 at 2.* He received a 240-month sentence followed by a ten-year term of supervised release. *Id.*; *Doc. 24-1 at 2*. Bray is currently incarcerated at FCI-Forest City Low, a federal prison operated by the Bureau of Prisons ("BOP"). *Doc. 1 at 1.* According to the BOP, Bray's anticipated release date is May 8, 2024. *Doc. 24-1 at 2.*

Because Bray's Petition challenges the calculation of his earned time credits under the FSA, the Court will begin by discussing the history of the FSA.

## II. Overview of the FSA

In December 2018, Congress enacted the FSA, which allows eligible federal prisoners to reduce their prison sentence through participation in evidence-based recidivism reduction ("EBRR") programming or productive activities ("PAs"). *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Prisoners accrue FSA Earned Time Credits pursuant to a statutory credit-accrual formula: "a prisoner shall earn 10 days of time credits for every 30 days of successful participation in [EBRRs] or [PAs]." 18 U.S.C. § 3632(d)(4)(A)(i). Certain minimum or low-risk inmates can earn fifteen days of time credits for every thirty days of successful participation.[2] The Court will refer to the ten or fifteen days of credits as the "credit multiplier."

---

[2] "A prisoner determined . . . to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in [EBRRs] and [PAs]." 18 U.S.C. § 3632(d)(4)(A)(ii).

The FSA also directs the Attorney General to develop a "risk and needs assessment system" ("System") for federal inmates. 18 U.S.C. § 3632(a). The System "shall be used to . . . determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism" and "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." 18 U.S.C. § 3632(a)(1), (4). On July 19, 2019, the BOP released the initial risk and needs assessment known as "PATTERN" (Prisoner Assessment Tool Targeting Estimated Risk and Needs). *See* FSA Time Credits, 87 Fed. Reg. 2705-01, 2707 (Jan. 19, 2022) (to be codified at 28 C.F.R. pts. 523, 541).

After the FSA's enactment, the BOP held a notice and comment period for its PATTERN regulations. Because the FSA does not define the phrase "day of successful participation," as used in the statutory credit-accrual formula, the BOP initially defined that phrase to mean eight hours of qualifying EBRRs or PAs. *Id.* at 2706.

During the comment period, several responders challenged the BOP's proposed definition of day as "incorrect, unworkable, and/or contrary to congressional intent." *Id.* Given those objections, and the difficulty it encountered in administering the proposed rule, the BOP changed the credit-accrual formula. *Id.*

3

at 2706–2707. The BOP's final credit-accrual regulation adds the word "period" to the credit-accrual formula: "For every thirty-day ***period*** that an eligible inmate successfully participates in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, the inmate will earn ten days of FSA Time Credits." 28 C.F.R. § 523.42(c)(1) (emphasis added).[3] According to the BOP, this interpretation of day is a "more straightforward and more administratively manageable approach that is consistent with the FSA's goal of promoting successful participation in EBRR Programs and PAs." FSA Time Credits, 87 FR at 2707.

### III. Bray's Challenge to The Calculation of His FSA Credits

### A. Exhaustion of Administrative Remedies

On August 16, 2022, Bray initiated this habeas action alleging that the BOP did not correctly calculate his FSA Earned Time Credits pursuant to the FSA. *Doc. 1 at 2.* According to Bray's calculation of his FSA Earned Time Credits, he is entitled to multiple credits per calendar day, and he uses a fifteen credits per thirty days multiplier. *Id. at 29–30.* Under Bray's calculations, he earned "2,529 days of [FSA Earned Time Credit] . . . redeemable for 1,265 days off of his sentence, community corrections and/or supervised release." *Id.* at 2.

On October 12, 2022, Respondent filed a Response arguing that Bray's habeas Petition should be dismissed because he failed to fully exhaust administrative

---

[3] The regulations also include the fifteen-credit multiplier, allowing certain low risk inmates to earn fifteen credits per thirty-day period. *See* 28 C.F.R. § 523.42(c)(2).

remedies before he initiated this action on August 16, 2022. *Doc. 14 at 13*. Alternatively, Respondent argues that Bray's habeas claims fail on the merits. *Id.*

The BOP has a four-step administrative exhaustion process for resolving inmate grievances: (1) a prisoner must submit an informal resolution with prison staff; (2) if the informal resolution is denied, a prisoner must submit a formal grievance to the Warden, on form BP-9; (3) if the formal grievance is denied, a prisoner must file an appeal of the Warden's decision to the appropriate Regional Director, on form BP-10; and (4) if the appeal is denied, the prisoner must challenge the Regional Director's decision by taking a final appeal to the General Counsel, on form BP-11. *See* 28 C.F.R. § 542.13–542.18. If a timely response is not provided by the decision maker at any of these steps, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. The BOP's response time is as follows: twenty days at the institutional level, thirty days at the Regional Director level, and forty days at the Central Office level. *Id.* The BOP can request a twenty-day extension at the institutional level, a thirty-day extension at the Regional Director level, or a twenty-day extension at the Central Office level. *Id.*

According to exhaustion documents in the record, before he initiated this action, Bray raised the BOP's alleged failure to correctly calculate his FSA Earned Time Credits in a step-one informal resolution which was denied on July 6, 2022. *Doc. 20 at 37*. He then completed a BP-9 raising the issue with the FCI Warden.

*Doc. 20 at 38*. On August 8, 2022, the Warden denied the BP-9. *Doc. 20 at 40.* On August 11, 2022, Bray filed a step-three appeal to the Regional Director by filing a BP-10. *Doc. 20 at 41*. For unexplained reasons, on August 16, 2022, *before receiving a response to his BP-10*, Bray initiated this action. *Doc. 1.*

On September 19, 2022, Bray filed a step-four BP-11 with the General Counsel. *Doc. 20 at 43.* On October 19, 2022, Bray received a response from the General Counsel staff advising him that, because he had not received a response from the Regional Director to his BP-10, his BP-11 was premature and must be resubmitted after he received a response to his step-three appeal. *Doc. 20 at 46.*

On October 24, 2022, Bray resubmitted his BP-11, along with attached copies of his informal resolution, BP-9, and BP-10, which were now properly completed. *Doc. 20 at 48–55.* According to Bray, as of January 4, 2023, the BOP had not responded to his BP-11, which meant under the BOP's exhaustion procedures his BP-11 was deemed denied. *Doc. 21 at 1; see also* 28 C.F.R. § 542.18 (stating that if the inmate appeals and fails to receive a timely answer, "the inmate may consider the absence of a response to be a denial at that level"). Accordingly, Bray argues that he has now fully and completely exhausted his administrative remedies on the FSA earned time credits claim that he is raising in his habeas action. *Doc. 21 at 1.*

Importantly, Respondent's Declaration in support of Bray's failure to exhaust was filed on October 12, 2022, two weeks *before* Bray properly resubmitted his BP-

11, which he fully exhausted in late December when the General Counsel elected not to provide a response to his BP-11. Bray made it clear in his Reply that he subsequently completed the exhaustion of his BP-11, and Respondent has not challenged that assertion. Thus, it appears Bray has fully and properly completed the exhaustion process on his claims, albeit *after* he initiated this action.

A federal inmate generally must exhaust his administrative remedies before seeking habeas relief under 18 U.S.C. § 2241. *Mathena v. United States,* 577 F.3d 943, 946 (8th Cir. 2009). However, because exhaustion is a judicially created requirement, which is not mandated by statute, "sound judicial discretion governs" its application. *McCarthy v. Madigan*, 503 U.S. 141, 144 (1992) (citations omitted); *see also Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) (noting that the exhaustion requirement for a § 2241 petition is judicially created, not jurisdictional).[4] In determining whether a § 2241 habeas petitioner should be required to exhaust his administrative remedies courts "balance the interests of the

---

[4] The Eighth Circuit has recognized that the judicially created exhaustion requirement promotes several purposes:

> (1) the development of the necessary factual background upon which the claim is based; (2) the exercise of administrative expertise and discretionary authority often necessary for the resolution of the dispute; (3) the autonomy of the prison administration; and (4) judicial efficiency from the settlement of disputes at the prison level.

*Mason v. Ciccone*, 531 F.2d 867, 870 (8th Cir. 1976) (citing *McKart v. United States*, 395 U.S. 185, 194–195 (1969)).

individual in retaining prompt access to a federal forum against countervailing institutional interests favoring exhaustion." *McCarthy,* 503 U.S. at 146. Because exhaustion is not jurisdictional, courts may create exceptions to the exhaustion requirement. *Frango v. Gonzales*, 437 F.3d 726, 728–29 (8th Cir. 2006). For example, exhaustion may not be required if a prisoner has belatedly completed the exhaustion process, or if requiring him to repeat that process would be an exercise in futility. *See Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004); *see also Thurman v. Sanders,* No. 2:06-CV-00114-SWW-HDY, 2006 WL 2372493 at *2 (E.D. Ark. Aug. 14, 2006) (citing *Ortiz v. Fleming,* 2004 WL 389076 (N.D. Texas 2004)); *cf. Leighnor v. Turner*, 884 F.2d 385, 388 (8th Cir. 1989) (reviewing a petition on the merits where prisoner belatedly exhausted his administrative remedies after filing his habeas petition because his initial non-exhaustion was effectively "cured"); *Depoister v. Birkholz*, No. 21-CV-684-ECT-BRT, 2021 WL 3492295, at *1 n.1 (D. Minn. Aug. 9, 2021), *aff'd*, No. 21-2992, 2021 WL 7210390 (8th Cir. Oct. 8, 2021) (reviewing a petition on the merits where the habeas petitioner finished the administrative process during the litigation and "effectively cured" his failure to exhaust administrative remedies) (citations omitted).

Bray argues it would be futile to require him to repeat *the same* four-step exhaustion process on his claims, which he successfully completed several months after he filed this action. *Doc. 1 at 3–4*; *Doc. 21 at 1*. While Respondent raises Bray's

failure to properly exhaust his claims, he does not address Bray's argument that he should be excused from exhausting his administrative remedies based on futility. *Doc. 14 at 13.*

Respondent supports his exhaustion argument with the Declaration of Rashonda J. Smith ("Smith"), an Associate Warden's Secretary at Forest City-Low. However, several crucial statements in her Declaration directly conflict with the undisputed facts in the record. *Doc. 14-1.* First, in Smith's Declaration, she relies on an Administrative Generalized Retrieval, dated September 20, 2022, to support her statement that "Inmate Bray did not file an appeal with the South-Central Regional Office . . . . " *Doc. 14-1 at 12–13.* However, the record evidence in this case demonstrates that Smith's statement is incorrect. The BOP's response to Bray's BP-10 *acknowledges* that Bray submitted his BP-10 appeal to the Regional Office and it was "*receipted on August 18, 2022.*" *Doc. 20 at 51.*

Second, Smith also declares that Bray did not complete his BP-11 appeal to the General Counsel. *Doc. 14-1 at 5.* Bray's Reply attaches copies of his informal resolution (step one), BP-9 (step two), and a properly completed BP-10 (step three). *Doc. 20 at 37-42. Bray also attaches a copy of the BP-11 he resubmitted on October 24, 2022 (Doc. 20 at 48–55),* with all of the properly completed supporting documents (informal resolution, BP-9, and BP-10). Bray's statement that the General Counsel did not respond to his BP-11 was not controverted by Respondent.

*Doc. 21 at 1.* Accordingly, pursuant to the BOP's exhaustion regulations, the General Counsel's failure to provide a response to Bray's BP-11 meant he fully exhausted his administrative remedies on the FSA Claim he is pursuing in this action.

Bray clearly failed to fully exhaust his administrative remedies, on the three habeas claims he is asserting in this action, *before* he filed his habeas Petition. However, it would now be futile to require him to go through the same steps of the exhaustion process that he fully completed within a few months after he initiated this action. Thus, in the exercise of its judicial discretion, the Court will proceed to the merits of Bray's three habeas claims.[5]

## B. Analysis of Bray's FSA Earned Time Credits Claims

### 1. Bray's Erroneous Definition of "Day" And His Self-Serving But Unsupportable Credit-Accrual Calculation.

First, Bray argues that, under the unambiguous language of the First Step Act, he has earned 2,529 days of [FSA] Earned Time Credits, which "equates to a total of 1,265 earned days off of his sentence." *Doc. 1 at 2.* According to Bray's

---

[5] Bray's grievances specifically raised the three claims he is pursuing in this action: (1) the BOP used an erroneous accrual formula to calculate his Earned Time Credits;  (2) the BOP used an incorrect credit multiplier (ten or fifteen days) in its calculation; and (3) the BOP incorrectly applied his credits.

In Bray's Reply, he also attempts to raise new claims related to his earned time credits. Because Bray has not exhausted his administrative remedies on any of these new claims, which he only mentioned in passing in the Addendum to his habeas Petition (*Doc. 19*), the Court finds those new claims must be developed through the BOP's administrative exhaustion process before he can return to federal court and seek relief under § 2241.

calculation, he is entitled to earn multiple credits per calendar day because the credits are "stackable." *Id. at 7, 29–30.*

The BOP argues that: (1) it has correctly interpreted and calculated Bray's earned time credits under the First Step Act; and (2) Bray's interpretation of the credit-accrual formula is unsupported by and in direct conflict with the plain language of the statute. Accordingly, the BOP asks the Court to defer to its interpretation of the FSA's credit-accrual formula, as clarified by its regulation adding the word "period" to that formula to replace the word "day." For the reasons discussed below, the Court agrees and defers to the BOP's reasonable interpretation of the FSA's credit-accrual formula.

In *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Court established a two-step framework for evaluating a challenge to a federal agency's statutory interpretation of federal legislation. Under *Chevron*, this Court must first determine if the phrase "a prisoner shall earn 10 days of time credits for every 30 days of successful participation in [EBRRs] or [PAs]," as used in 18 U.S.C. § 3632(d)(4)(A)(i), is clear on its face and "directly [speaks] to the precise question at issue." *Ameren Corp. v. FCC*, 865 F.3d 1009, 1012 (8th Cir. 2017) (quoting *Chevron*, 467 U.S. at 842). If the statute clearly and unambiguously supports Bray's interpretation of the credit-accrual formula, the Court "must give effect to the unambiguously expressed intent of Congress" and direct the BOP to

apply the statute as written. *Id*. (quoting *Chevron*, 467 U.S. at 843). However, if "the statute is silent or ambiguous with respect to the specific issue" the Court must proceed to step two, and evaluate "whether the agency's [regulatory] answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

So long as "the agency's reading fills a gap or defines a term in a reasonable way in light of the Legislature's design, we give that reading controlling weight, even if it is not the answer the court would have reached if the question initially had arisen in a judicial proceeding." *Regions Hosp. v. Shalala*, 522 U.S. 448, 457 (1998) (citation and internal quotation marks omitted). In other words, the agency's view "governs if it is a reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts." *Ameren Corp.,* 865 F.3d at 1012 (quoting *Entergy Corp. v. Riverkeeper, Inc*., 556 U.S. 208, 218 (2009)).

As Bray admits, the FSA does not define what constitutes "a day of successful participation." *Doc. 1 at 6*. Because the legislation is silent on the meaning of that crucially important phrase, the Court must proceed to the second step of the *Chevron* analysis and decide if the BOP's interpretation of that phrase—as encompassed in regulations—is  reasonable.

The BOP's final regulation adds the word "period" to the credit-accrual formula: "For every thirty-day period that an eligible inmate successfully

participates in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, the inmate will earn ten days of FSA Time Credits." 28 C.F.R. § 523.42(c)(1). The BOP's clarifying regulation makes the final credit-accrual rule understandable and constitutes a reasonable interpretation of the statute. As previously explained, the BOP engaged in a notice and comment period and, after receiving feedback from responders, added the word "period" to clarify the meaning of the statute, make the rule "administratively manageable," and incentivize participation in recidivism-reduction programing. *See* FSA Time Credits, 87 FR at 2707.[6]

Bray's Reply takes issue with the BOP's focus on "calendar days" and not on "participation in" or "completion of" programming. *Doc. 20 at 24*. However, because the BOP's interpretation of the FSA credit-accrual formula is clearly reasonable, Bray's argument is without merit. While the BOP's interpretation is not the only possible interpretation, it is a reasonable interpretation. *See Riverkeeper*, 556 U.S. at 218. Thus, the Court also defers to the BOP's interpretation of the statutory credit-accrual formula.

---

[6] When announcing the rule, the BOP reasoned that: "[b]y clarifying the method for awarding Time Credits in this manner to ensure it furthers Congressional intent of the statute, the Bureau hopes to increase the amount of FSA Time Credits that may be awarded to eligible inmates." FSA Time Credits, 87 Fed. Reg. 2705-01, 2707 (Jan. 19, 2022) (to be codified at 28 C.F.R. pts. 523, 541).

Finally, Bray's interpretation of the statute is based on his novel belief that its language allows prisoners to accrue multiple credits per day. Suffice to say, there is "no support [for Bray's position] in either the applicable statutory language or the legislative history of either the FSA or the BOP rules." *Burruss v. Hawkins*, No. 4:22-CV-2740, 2023 WL 319955, at *6 (S.D. Tex. Jan. 19, 2023) (challenging the legal basis for multiple FSA Credits per day but dismissing the § 2241 habeas petition on separate grounds).

Accordingly, Bray's interpretation of the FSA's credit-accrual formula is clearly erroneous and contrary to a fair reading of the language in the statute and is wholly without merit. As a result, Bray's first habeas claim is denied.

### 2. Bray's Claim The BOP Lacks Authority to Determine His Recidivism Risk And To Calculate His Credit-Earning Multiplier

On March 8, 2022, Bray received a general recidivism assessment score of 33, equating to risk level medium ("R-Med"). *Doc. 20 at 21.* On June 28, 2022, the BOP reassessed Bray, and he received a new score of 34, equating to risk level low ("R-Low"). *Id. at 22.* According to Bray, the risk assessment criteria for low and medium-risk scores changed when the BOP updated the risk assessment software in between his assessments. *Id.* Because Bray's March score would qualify as a low-risk recidivism score under the June criteria, he alleges he "accommodated" the two assessment periods for a low-risk score and should earn fifteen credits per thirty-day period, rather than the ten credits per thirty-day period multiplier calculated by the

BOP. *Id*. Bray maintains that he "cannot be held to a standard that when updated beyond his control categorized him incorrectly at the earlier date." *Id.*

The FSA directly addresses how a prisoner earns fifteen credits per thirty-day period: "A prisoner determined *by the Bureau of Prisons* to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits [in addition to the ten days all prisoners earn for successfully participating in programs or activities] for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii) (emphasis added).

While Bray believes he is entitled to earn fifteen credits per thirty-day period, the evidence before the Court does not support his position. Bray's own exhibits reflect a medium-level risk assessment in March 2022 and a low-level risk assessment in June 2022. *Doc. 20 at 59, 60*. The statute clearly grants the BOP authority to determine who is minimum or low-risk and assign the appropriate credit-earning multiplier. Pursuant to the BOP's assessments, the BOP correctly calculated Bray's credits using a ten credit per thirty-day period multiplier. At no point did Bray meet the statutory requirement for consecutive low-risk assessments as determined by the BOP. Accordingly, Bray's second habeas claim is denied.

15

### 3. Bray's Challenge To The Way The BOP Applied His FSA Earned Time Credits.

Finally, Bray argues that his credits "should be applied to his sentence post haste." *Doc. 1 at 2.* After reviewing the record, the Court finds that the BOP has properly applied Bray's FSA Earned Time Credits.

Bray's sentence also includes a 10-year term of supervised release. *Doc. 24-1 at 2.* The FSA specifically addresses how the BOP should handle a "term of supervised release," within the context of applying time credits: "If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of supervised release after imprisonment pursuant to section 3583, the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, *not to exceed 12 months*, based on the application of time credits under section 3632." 18 U.S.C. § 3624(g)(3) (emphasis added).

According to the BOP's most recent calculation of Bray's earned time credits, as of March 10, 2023, he has 500 total FSA earned time credits. *Doc. 24-2 at 1.* The BOP applied, and Bray has received, *the statutory maximum* of 365 days of credits towards early transfer to supervised release. *Doc. 24 at 1.* Bray's additional 135 days of credits, over and above the 365 days of credits applied to his sentence, may be applied by the BOP towards Bray's early transfer to pre-release custody in a residential reentry center ("RRC"). *Id.*

16

Accordingly, the BOP has correctly applied Bray's earned time credits pursuant to § 3624(g)(3). *See Mills v. Starr*, Civ. No. 21-1335 (SRN/BRT), 2022 WL 4084178, at *4 (D. Minn. Aug. 17, 2022) ("Early transfer to supervised release effectively reduces an inmate's sentence by, at max, one year"); *see also Burruss*, 2023 WL 319955, at *6–7 (noting that the BOP properly applied and reduced petitioner's sentence by 365 days where the petitioner had a term of supervised release but dismissing on other grounds) (citing 18 U.S.C. § 3624(g)(3)). As a result, Bray's third habeas claim is denied.

## IV. Conclusion

Because the BOP correctly calculated and applied Bray's FSA Earned Time Credits, his three habeas claims are denied and dismissed with prejudice.

IT IS THEREFORE ORDERED THAT Bray's 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus (*Doc. 1*)*, Supplemental Petition (*Doc. 6*), and *Addendum* (*Doc. 19*) are DENIED and his three habeas claims challenging the BOP's calculation and application of his earned time credits are DISMISSED, WITH PREJUDICE. All pending motions are DENIED as moot.

SO ORDERED THIS 11th day of April, 2023.

_____
UNITED STATES MAGISTRATE JUDGE